THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACY NEIGHBORS AND BARBARA
NEIGHBORS; ARUL MENEZES AND
LUCRETIA VANDERWENDE; LAKE
SAMMAMISH 4257 LLC; HERBERT MOORE
AND ELYNNE MOORE; TED DAVIS AND
ELAINE DAVIS; REID BROWN AND
TERESA BROWN; SHAWN HUARTE AND
TRINA HUARTE; ANNETTE MCNABB;
EUGENE MOREL AND ELIZABETH
MOREL; VOLKER ELSTE AND GAIL
UREEL; JOHN R. WARD AND JOANNA
WARD, AS CO-TRUSTEES OF THE WARD
HALES LIVING TRUST; YORK HUTTON; L.
LARS KNUDSEN AND LISE SHDO,

Plaintiffs,

v.

KING COUNTY, a municipal corporation and
political subdivision of the State of Washington,

Defendants.

No. 2:15-cv-01358-MJP

**OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND**

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 1

    A.   Plaintiffs, not King County, Misrepresent Plaintiffs' Complaint. ........................ 1

    B.   Plaintiffs' Declaratory Relief and Quiet Title Claims Raise a Substantial Federal
       Question. .............................................................................................................. 3

    C.   The Dismissal of *Neighbors I* for Lack of Jurisdiction Does not Control Removal
       Because Plaintiffs' Claims are Different and Raise Federal Questions. ................ 6

    D.   Federal Jurisdiction also Exists Because Plaintiffs' Claims of Adverse Possession
       are Completely Preempted by the ICCTA. ........................................................... 6

          i.    The Preemptive Effect of the ICCTA is Widely Recognized. ................... 7

          ii.   The ICCTA Requires Categorical Preemption, Without an "As Applied"
             Analysis. ................................................................................................. 11

          iii.  Plaintiffs Seek to Redefine Boundaries Already Recognized by the STB
             through Adverse Possession. .................................................................... 13

    E.   The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' Remaining
       Claims. ............................................................................................................... 15

III.    CONCLUSION ...................................................................................................... 15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page i
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

<u>TABLE OF AUTHORITIES</u>

2

<u>**Cases**</u>

3

*14500 Ltd. v. CSX Trans., Inc.*, 2013 WL 1088409 (N.D. Ohio, Mar. 14, 2013) .............. 1, 7, 10, 11

4

*Adams v. California Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007) ....................................... 6

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ................................................................................ 11

5

*Ao & Zhou*, Petition for Declaratory Order, FD 35539, 2012 WL 2047726 (S.T.B. June 4,
6     2012) ..................................................................................................................... 11, 12, 13

*Association of Am. R.R. v. South Coast Air Quality Management Dist.*, 622 F.3d 1094 (9th
7     Cir. 2010) .................................................................................................................. 8, 9

8

*Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998) ..................................................................... 8

9

*B&S Holdings LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252 (E.D. Wash. Sept. 11, 2012).. 1, 7, 9, 10

10

*Brennan v. Sw. Airlines Co*., 134 F.3d 1405 (9th Cir. 1998) ............................................................. 3

*Canadian Nat'l Ry. Co. v. Montreal Me. Alt. Ry*., 750 F. Supp. 189 (D. Me. 2010) ..................... 7

11

*Cedarapids Inc. v. Chicago Cent. & Pac. R.R.*, 265 F. Supp. 2d 1005 (N.D. Iowa, 2003) ............... 7

12

*City of N. Little Rock, Arkansas v. Union Pac. R.R. Co.*, 808 F. Supp. 2d 1102 (E.D. Ark.
13     2011) ........................................................................................................................... 8

*CSX Transp., Inc., Petition for Declaratory Order*, No. 34662, 2005 WL 1024490 (May 3,
14     2005) ..................................................................................................................... 12, 13

15

*Dana R. Hodges Trust v. United States*, 101 Fed. Cl. 549 (2011) .................................................... 13

16

*Deford v. Soo Line R. Co*., 867 F.2d 1080 (8th Cir. 1989) ................................................................ 8

*Drawhorn v. Qwest Comm. Int'l, Inc.*, 121 F.Supp.2d 554 (E.D. Tex. 2000) ................................. 5

17

*Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) ...................................................... 7

18

*Harris v. Cnty. of Orange*, 682 F.3d 1126 (9th Cir. 2012) ............................................................. 14

19

*Hunt Skansie Land, LLC v. City of Gig Harbor*, 2010 WL 2650502 (W.D. Wash. July 1,
20     2010) ......................................................................................................................... 15

21

*In Re AT&T Fiber Optic Cable Installation Litig.*, 2001 WL 1397295 (S.D. Ind. Nov. 5,
     2001) ........................................................................................................................... 5

22

*Kaseburg v. Port of Seattle*, 2015 WL 4508790 (W.D. Wash. July 24, 2015) ................................. 4

23

*Maumee & Western RR Corp, Petition for Declaratory Order*, No. 34354, 2004 WL 395835
     (STB, Mar. 3, 2004) ................................................................................................... 12

24

*Neighbors v. King County,* No. C15-970, 2015 WL 3949245 (W.D. Wash. June 26, 2015) ............ 6

25

*Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 (10th Cir. 2006) ................................................ 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

*Palmetto Conservation Found. v. Smith*, 642 F. Supp. 2d 518 (D.S.C. 2009) .................................. 13

*PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535 (5th Cir. 2005) ........................... 7

*Shupp v. Reading Blue Mountain*, 850 F. Supp.2d 490 (M.D. Pa. 2012) ..................................... 8, 11

*South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D. S.D. 2003) .............................................................................................................................................. 7

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209 (9th Cir. 1998) .............. 2

*The Land Conservancy of Seattle & King Cnty.—Abandonment Exemption—in King Cnty., Washington*, No. AB-508X, 1997 WL 450377 (STB, Aug. 11, 1997) ......................................... 13

*Washington Sec. & Invest. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188 (2006) ........... 4

*Williams v. Costco Wholesale Corp.*, 471 F.3d 975 (9th Cir. 2006) ................................................ 2, 3

**Statutes**

16 U.S.C. § 1247 ................................................................................................................................. 1, 3, 4

28 U.S.C. § 1367 ...................................................................................................................................... 15

49 U.S.C. § 10501 ............................................................................................................................... 1, 6, 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

## I.    INTRODUCTION

Plaintiffs' Complaint contains artfully plead claims raising a substantial federal question and claims that are completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501.  King County properly removed this action.

In their attempt to avoid federal jurisdiction, Plaintiffs try to recast many of their allegations and ask the Court to ignore other allegations.  Because jurisdiction is determined based only on the plain language of their Complaint, this effort fails.  Plaintiffs' argument that there is no federal question jurisdiction if their well-pleaded complaint does not mention the National Trails System Act, ("Trails Act"), 16 U.S.C. § 1247, also fails under the artful pleading doctrine.  Plaintiffs' state law claims, in which they must demonstrate superiority of title, necessarily involves a substantial federal issue: whether the Trails Act stops the application of state law.  Last, despite Plaintiffs' confusion, courts regularly uphold removal based on the complete preemptive force of the ICCTA. Two court opinions, on facts not distinguishable from those at hand, squarely hold that claims for adverse possession of a railroad corridor are removable because those claims are completely preemption under the ICCTA.  *14500 Ltd. v. CSX Trans., Inc.*, 2013 WL 1088409, at *4-5 (N.D. Ohio, Mar. 14, 2013) ("[T]he ICCTA completely preempts Plaintiff's state law claims" for adverse possession of a rail yard.); *B&S Holdings LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252, 1258 (E.D. Wash. Sept. 11, 2012) ("[T]he ICCTA completely preempts this state law adverse possession cause of action.").  This Court should reach the same conclusion.

This Court has federal subject matter jurisdiction.  There is no basis to remand Plaintiffs' claims.  The Court should deny Plaintiffs' Motion to Remand.

## II.    ARGUMENT

### A.    Plaintiffs, not King County, Misrepresent Plaintiffs' Complaint.

In seeking remand, Plaintiffs attempt to recast their claims and rewrite their Complaint.  But, "the propriety of removal is determined solely on the basis of the pleadings filed in state court."

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 1
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

*Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).  Neither subsequent amendments nor proposed amendments to pleadings are analyzed to determine federal jurisdiction.  *Id.*; *see also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).  A plain reading of Plaintiffs' Complaint demonstrates that a federal question is part of their artfully plead Complaint and that federal jurisdiction also exists because Plaintiffs' claims are subject to complete preemption.

To avoid federal jurisdiction, Plaintiffs now assert that they "do not dispute that King County has rights in the corridor."  Motion at 3.  Plaintiffs also say "Plaintiffs *are not* claiming adverse possession of the former railroad right-of-way."  Motion at 11 (emphasis in original).  In contrast, their Complaint – which controls this Court's jurisdiction – actually alleges that:

- "Defendant did not acquire ***any*** interest in properties abutting the Plaintiffs' properties when it accepted Defendant's [sic] Quit Claim Deed."  Compl. ¶ 21 (emphasis added).

- "Defendant and the public do not have ***any*** right to use or build in the ROW adjacent to Plaintiffs' properties."  Compl. ¶ 26(c) (emphasis added).

- "Alternatively, Defendant acquired, at most, unrecorded and unperfected prescriptive easement rights to cross the area that had been improved with railroad tracks, ties and ballast, which is much narrower than the width of the ROW."  Compl. ¶ 22

- "If Defendant is able to prove BNSF acquired prescriptive easement rights to widths greater than the railroad tracks, ties and ballast, Defendant later lost those rights when Plaintiffs improved and occupied major portions of the ROW."  Compl. ¶ 23.

- "Plaintiffs have adversely possessed the sections of the ROW, adjacent to their properties, lying outside the margins of the former railroad tracks, ties and ballast."  Compl. ¶ 24.

- "Defendant and the public do not have ***any*** right to use any portions of the ROW that have been adversely possessed by Plaintiffs."  Compl. ¶ 26(e) (emphasis added).

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    Plaintiffs' Complaint speaks for itself, and the Court can plainly determine on its own accord

2    that it is Plaintiffs, not King County, who seek to mischaracterize Plaintiffs' Complaint. *Cf.* Motion

3    at 3-4.  Plaintiffs' Complaint clearly asserts that King County gained no rights from BNSF in the

4    corridor adjacent to Plaintiffs' land and that even if it did, Plaintiffs have adversely possessed any

5    portions of the former ROW that extends beyond the former ballast of the railroad.

6    As a last ditch effort to avoid federal jurisdiction, Plaintiffs then claim that if the case is

7    remanded they will file an amended complaint that removes all references to adverse possession.

8    Motion at 13.  Future, hypothetical amendments to pleadings have no relevance to the Court's

9    remand decision.  *See Williams*, 471 F.3d at 976.  But they do highlight Plaintiffs' efforts to avoid

10   this Court's jurisdiction.  Nonetheless, "where the district court is presented with a case within its

11   original jurisdiction, it has "a 'virtually unflagging obligation' to exercise the jurisdiction conferred

12   upon [it] by the coordinate branches of government and duly invoked by litigants."  *Id.* at 977

13   (citations omitted).

14       **B.    Plaintiffs' Declaratory Relief and Quiet Title Claims Raise a Substantial Federal
               Question.**

15

16   Plaintiffs' primary argument against federal jurisdiction under the National Trail Act, 16

17   U.S.C. § 1247(d) ("Trails Act") is that they did not invoke or even mention the Trails Act, and as

18   such there can be no federal question.  Motion at 4.  Plaintiffs miss the point.  Under the artful

19   pleading doctrine, which is an exception to the well-pleaded complaint rule, federal jurisdiction

20   exists if resolution of plaintiffs' state law claim necessarily involves a substantial federal issue.

21   *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998).

22   Plaintiffs fail to acknowledge that the elements of their state law claims, on which they have

23   the burden of proof, require an interpretation of and determination of federal law.  To prove their

24   declaratory relief and quiet title claims, Plaintiffs must demonstrate that King County did not obtain

25   any rights in the corridor that BNSF obtained by adverse possession and that they have superior title.

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 3
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   *See e.g., Washington Sec. & Invest. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188 (2006)

2   ("A party seeking to quiet title must succeed on the strength of its own title, and cannot prevail based

3   on the weakness of the other party's title."). This is not merely a matter of deed interpretation or

4   application of state law.  As Plaintiffs acknowledge in their other federal litigation pending in this

5   Court, the Quit Claim deed at issue here was entered into as part of the railbanking process under

6   the Trails Act.  *See Hornish v. King County*, No. 15cv00284, Amended Compl. for Decl. Relief,

7   Dkt. No. 31 at 3 & 12 (Aug. 14, 2015).   Under the Trails Act, "in case of interim use of any

8   established railroad rights-of-way pursuant to donation, transfer, lease sale or otherwise in a manner

9   consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad

10  purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an

11  abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).

12          Here, Plaintiffs' claim is that while BNSF may have obtained the right to use the corridor (or

13  portions of it) adjacent to their land by adverse possession, BNSF could not, and did not, convey

14  those rights to King County pursuant to the Quit Claim deed or otherwise.  Compl. ¶ 20 ("BNSF did

15  not, in fact, have any recorded interests in said properties capable of being conveyed to the Land

16  Conservancy of Seattle and Defendant"); *id.* ¶ 21 ("Consequently, Defendant did not acquire any

17  interest in the properties abutting Plaintiffs' properties when it accepted Defendant's [sic] Quit

18  Claim Deed.").  Plaintiffs' theory appears to be that only recorded interests can be conveyed by a

19  Quit Claim Deed and that one who acquires land by adverse possession cannot convey it to another.

20  Whether that theory is true or not, however, is beside the point for purposes of determining federal

21  question jurisdiction.  Here, to prevail on their claims Plaintiffs must also demonstrate that the Trails

22  Act did not stop the application of state law, which might otherwise extinguish a railroad easement

23  following discontinuance of use.  *Cf. Kaseburg v. Port of Seattle*, 2015 WL 4508790, *1 (W.D.

24  Wash. July 24, 2015).

25

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 4
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    This case is very similar to *Drawhorn v. Qwest Comm. Int'l, Inc.*, 121 F.Supp.2d 554 (E.D.

2    Tex. 2000).   In *Drawhorn*, the plaintiffs brought state law claims for declaratory relief, unjust

3    enrichment, trespass and slander of title, asserting that the railroads had no rights to permit the

4    defendants to install fiber optic cable in railroad corridors.  *Id.* at 557-58.  The defendants removed

5    the action to federal court on the basis that the interpretation of federal land grant statutes – a federal

6    question – was a necessary part of the plaintiffs' artfully plead claims.  *Id.*  In a detailed and well-

7    reasoned opinion, the *Drawhorn* court agreed:

8
9            To declare the rights of all the parties in this suit there is no way around
             the fact that a court is going to have to interpret the various federal
10           railroad statutes and that this is going to be a necessary and substantial
             part of the suit. Plaintiffs cannot walk into court and ask to have their
11           rights declared without the court interpreting the federal statutes since
             the railroads' rights derive from these statutes. This is not a matter of
12           defense since plaintiffs must prove their chain of title does not contain
             an easement to Qwest, which allegedly comes from the railroads, in
13           order to succeed under their action for declaratory judgment.
             Therefore, the rights of all the parties [are] a necessary and substantial
14           part of the action for declaratory judgment.

15   *Id.* at 561.[1]  So too here.  Plaintiffs must demonstrate that their title is superior and that King County

16   is not entitled to the rights and possession of the corridor pursuant to the Quit Claim deed.  This will

17   necessarily require Plaintiffs to demonstrate that King County has no interest in the corridor pursuant

18   to railbanking under the Trails Act and will require this Court to interpret the Trails Act when ruling

19   on Plaintiffs' artfully plead state-law claims.

20   //

21   //

22   //

23   //

24   _____

25   [1] *See also Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 (10th Cir. 2006); *In Re AT&T Fiber Optic Cable Installation Litig.*, 2001 WL 1397295 (S.D. Ind. Nov. 5, 2001).

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 5
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

### C. The Dismissal of *Neighbors I* for Lack of Jurisdiction Does not Control Removal Because Plaintiffs' Claims are Different and Raise Federal Questions.

Plaintiffs also claim that this Court's decision in *Neighbors v. King County,* No. C15-970, 2015 WL 3949245 (W.D. Wash. June 26, 2015) ("*Neighbors I*") controls the outcome here.[2]  Motion at 5.  But the *Neighbors I* complaint only addressed the width of the easement, which both the parties and the Court agreed was an issue determined by state law.  As such, it was appropriate for the Court to dismiss the *Neighbors I* complaint on that basis.  That is not true of Plaintiffs' Complaint here.  As the Court in *Neighbors I* was also careful to note, that case did not raise a "discernible dispute about how the Trails Act operated or that it could only facilitate the transfer of that which BNSF already possessed."  *Id*. at *2.  Plaintiffs' claims here – that King County acquired no interest in the corridor by the Quit Claim deed – raise not merely a discernable dispute about the Trails Act, but a substantial federal question.

### D. Federal Jurisdiction also Exists Because Plaintiffs' Claims of Adverse Possession are Completely Preempted by the ICCTA.

Without ever analyzing the language of the ICCTA, Plaintiffs argue that because neither the U.S. Supreme Court nor the Ninth Circuit have weighed in on this issue, this Court should hold that the ICCTA does not completely preempt Plaintiffs' claims.  Motion at 5-8.  Plaintiffs are wrong.

The plain language of the ICCTA broadly and expressly provides the Surface Transportation Board ("STB") with exclusive jurisdiction here.  Pursuant to 49 U.S.C. § 10501(b):

The ***jurisdiction of the Surface Transportation Board over—***

---

[2] Contrary to Plaintiffs' assertion, King County does not claim that the pending *Hornish v. King County* case confers an additional basis for this Court to assert jurisdiction over this case.  Motion at 4-5.  While Plaintiffs invoked this Court's jurisdiction for the *Hornish* case, King County recognizes the long-established rule that the jurisdictional basis for each complaint stands on its own.  Rather, King County provided the background facts regarding the *Hornish* case in the Notice of Removal to give the Court the context of Plaintiffs' new complaint.  That Plaintiffs chose to file a new state complaint instead of amending the *Hornish* case is their choice, even though their state complaint is removable for the reasons set forth herein and even through such efforts amount to improper claim splitting or eventual claim preclusion. *See Adams v. California Dep't of Health Servs*., 487 F.3d 684, 688-89 (9th Cir. 2007).

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 6
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

> **(1)** *transportation by rail carriers, and the remedies provided in this part with respect to* rates, classifications, rules (including car service, interchange, and other operating rules), practices, *routes, services, and facilities* of such carriers; *and*
>
> **(2)** the *construction, acquisition, operation, abandonment, or discontinuance* of spur, industrial, team, switching, or side tracks, *or facilities*, even if the tracks are located, or intended to be located, entirely in one State,
>
> *is exclusive*. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C.A. § 10501(b) (emphasis added).   It is difficult to imagine a broader statement of preemption.

      *i.*      *The Preemptive Effect of the ICCTA is Widely Recognized.*

For this reason, courts routinely uphold removal based on the complete preemptive force of the ICCTA. *Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796, 807-08 (5th Cir. 2011) (The ICCTA "completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm."); *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535 (5th Cir. 2005) (upholding removal because the complete preemption doctrine applied to the ICCTA); *14500 Ltd. v. CSX Trans., Inc.*, 2013 WL 1088409, at *4-5 (N.D. Ohio, Mar. 14, 2013) ("[T]he ICCTA completely preempts Plaintiff's state law claims" for adverse possession of rail yard land.); *B&S Holdings LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252, 1258 (E.D. Wash. Sept. 11, 2012) ("[T]he ICCTA completely preempts this state law adverse possession cause of action."); *Canadian Nat'l Ry. Co. v. Montreal Me. Alt. Ry.*, 750 F. Supp. 2d 189, 196 (D. Me. 2010) (approving removal because ICCTA completely preempted state law claims concerning easement rights); *South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919, 937 (D. S.D. 2003) (denying motion to remand because ICCTA preempted claims for breach of contract and tortious interference with trackage rights); *Cedarapids Inc. v. Chicago Cent. & Pac. R.R.*, 265 F. Supp. 2d 1005, 1014-15 (N.D. Iowa, 2003) (denying motion to remand because ICCTA preempted

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 7
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1  claims for quiet title which would have forced abandonment of right of way); *see also Deford v. Soo*

2  *Line R. Co.*, 867 F.2d 1080, 1088 (8th Cir. 1989) (affirming removal because the ICCTA's

3  predecessor, "the Interstate Commerce Act, . . . so pervasively occupies the field of railroad

4  governance that it completely preempts Deford's state law claims"); *City of N. Little Rock, Arkansas*

5  *v. Union Pac. R.R. Co.*, 808 F. Supp. 2d 1102, 1105 (E.D. Ark. 2011) (dismissing claims to condemn

6  approximately 30 feet of 100 feet right of way -- in case removed to federal court on grounds of

7  ICCTA preemption -- because of interference with railroad operations, as "Congress has vested

8  exclusive jurisdiction over the regulation of rail transportation in the Surface Transportation Board"

9  ); *but see Shupp v. Reading Blue Mountain*, 850 F. Supp.2d 490 (M.D. Pa. 2012) (noting differing

10  views among some courts as to whether ICCTA completely preempts state law).

11      While the Ninth Circuit has not addressed ICCTA preemption in the context of removal, it

12  has concluded that the preemptive reach of the ICCTA is vast.  *Association of Am. R.R. v. South*

13  *Coast Air Quality Management Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010) ("Because the ICCTA

14  preempts all state laws that may reasonably be said to have the effect of managing or governing rail

15  transportation, ICCTA preempts the District's [air pollution] rules here.").  In  *Auburn v. United*

16  *States*, which also preempted local efforts that would have infringed on the STB's authority, the

17  Ninth Circuit recognized the following:

18  - "Congress and courts long have recognized the need to regulate railroad operations at the federal level."  154 F.3d 1025, 1029 (9th Cir. 1998).

19
20  - "The Interstate Commerce Act . . ., which, as amended [by the ICCTA], still governs federal regulation of railroads, has been recognized as 'among the most pervasive and comprehensive of federal regulatory schemes.'  *Id.*

21
22  - "Pre-ICCTA case law addressing federal preemption over railroad operations also supports a broad reading of the statute."  *Id.* at 1030.

23  - "State and local permitting laws regarding railroad operations are preempted by the plain language of the ICCTA."  *Id.* at 1033.

24      Despite Plaintiffs' unsupported musings to the contrary, there is no reason to believe that the

25  Ninth Circuit will depart from its prior opinions holding that "the ICCTA preempts all state laws

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 8
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    that may reasonably said to have effect of managing or governing rail transportation." *Association*

2    *of Am. R.R.*, 622 F.3d at 1098.  Based on this prior precedent, the Ninth Circuit, when finally faced

3    with the issue, will surely agree that the ICCTA completely preempts state law claims.

4         King County is aware of two court opinions that directly address the issue at hand:  whether

5    state law claims for adverse possession of portions of a railroad corridor are removable based on

6    complete preemption by the ICCTA.  Both cases denied remand, holding that complete preemption

7    existed for adverse possession claims.  They are compelling authority here.

8         In *B&S Holdings LLC*, an adjoining property owner's building and parking area encroached

9    on BNSF property.  889 F. Supp.2d at 1254.  B&S Holdings sued in state court seeking to quiet title

10   to the land it claimed by adverse possession, and BNSF removed to federal court.  *Id.*  After

11   discussing the complete preemption doctrine, citing *Elam*, 635 F.3d at 796, the court reviewed the

12   statutory language of the ICCTA and noted the pervasive and comprehensive nature of the Act.  *Id.*

13   at 1256-57.  The court also looked to STB decisions as guidance regarding the scope of ICCTA

14   preemption.  *Id.* at 1257 (citing *Association of Am. RR*, 622 F.3d at 1097).  To this end, the *B&S*

15   *Holdings* court relied heavily on a recent STB decision – regarding plaintiffs within King County –

16   that determined state law claims for adverse possession of strips along a railbanked corridor were

17   preempted.  *Id*. at 1257 (citing *Jie Ao and Xin Zhou, Petition for Declaratory Order*, FD 35539,

18   2012 WL 2047726, at *1 (STB, June 6, 2012)).   After this thorough analysis, the *B&S Holdings*

19   court recognized a clear congressional intent that STB had exclusive authority over the adverse

20   possession claims:

21              To be sure, Congressional intent is clear and unambiguously expressed
             in the preemption statute giving the Surface Transportation Board
22              exclusive authority over rail transportation, including the facilities and
             property to conduct such commerce: "the remedies provided under this
23              part with respect to regulation of rail transportation *are exclusive and
             preempt the remedies provided under Federal or State law*."  49 U.S.C.
24              § 10501(b) (emphasis added).

25

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 9
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

> Accordingly, the Court finds that the ICCTA completely preempts this state law adverse possession cause of action because not only would it interfere with railroad operations, but would divest the railroad of the very property with which it conducts its operations.

*B & S Holdings, LLC,* 889 F. Supp. 2d at 1258.  As such, the Court concluded that removal was proper and denied the plaintiffs' motion to remand. *Id.* at 1258-59.

The court in *14500 Ltd.* made a very similar determination.  In that case, the plaintiff and its predecessor had erected a fence over the railroad's land in a railyard.  2013 WL 1088409, at *1.  The plaintiff brought an action in state court for quiet title based on adverse possession and for a prescriptive easement.  *Id.*  The railroad removed to federal court, alleging complete preemption under the ICCTA.  *Id.*  In discussing complete preemption and the ICCTA, the court noted that the Sixth Circuit had previously ruled that:

> the ICCTA preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.

*Id.* at *3 (citing *Adrian & Blissfield R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008)). The court also reviewed declarations from railroad personnel regarding the interconnected nature of the rail corridor and rail yard at issue, which stated that the "loss of the property at issue would have serious, negative consequences on rail transportation." *Id.*  The court concluded:  "The ICCTA completely preempts Plaintiffs' state law claims.  Both a United States Circuit Court and the STB have concluded that attempts to take railroad property are preempted by the ICCTA." *Id.* at *4. After reviewing with approval the decisions in *B&S Holdings* and *Ao-Zhou*, the Court further concluded:

> Given the Government's overarching interest in 'retaining rail property in the rail network' and Defendants' own representations that it needs the flexibility afforded the property in question to meet future needs, the Court finds it affects railroad transportation and is preempted by the ICCTA.

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 10
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

*Id.* at *5. *B&S Holdings* and *14500 Ltd.* are directly on point, and confirm that this Court has federal jurisdiction because the ICCTA completely preempts Plaintiffs' adverse possession claims.

ii.     The ICCTA Requires Categorical Preemption, Without an "As Applied" Analysis.

Despite Plaintiffs' suggestion to the contrary, the Court's examination of the preemptive effect of the ICCTA here is not an "as applied" or "ordinary" preemption analysis. Motion at 7-11. Rather, the Court must simply follow the traditional steps of determining the substance and scope of the complete preemption. Concluding that the ICCTA completely preempts state law is but the first step in the process. The Court must also determine what claims, laws or regulations fall within scope of that preemption. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) ("If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains."). That process does not turn the complete preemption analysis into "as applied" or "ordinary" or defensive preemption. Plaintiffs' reliance on the contrary decision in *Reading Blue Mountain* is unavailing. Motion at 9. A careful reading of *Shupp* demonstrates that the court simply mistook the process of determining the scope of ICCTA preemption as an "as applied" analysis and thus created a "logical conundrum" for itself which it held to preclude complete preemption under the ICCTA. *See* 850 F. Supp. 2d at 500.

While not binding on this Court, the STB provides a helpful description of the difference between categorical preemption and "as applied" preemption, demonstrating why *Shupp* is wrongly decided.[3] *CSX Transp., Inc., Petition for Declaratory Order*, No. 34662, 2005 WL 1024490, at *2-

---

[3] The STB's "categorical" analysis corresponds to express preemption, whereas its "as applied" analysis corresponds to an implied preemption framework. Merely because a state law claim is capable of an "as applied" analysis does not mean that there is not categorical preemption because the law seeks to interfere with the STB's regulatory activities. *See Ao & Zhou*, Petition for Declaratory Order, FD 35539, 2012 WL 2047726, at *1 (S.T.B. June 4, 2012) ("[W]e find that Petitioners' state law adverse possession claim is federally preempted regardless of whether this case is analyzed as 'categorical preemption' (preemption that occurs when a state or local regulation is preempted on its face) or as 'as applied' preemption (based on the degree of interference with that particular action would have on railroad transportation)." Thus, just because

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

1   3 (May 3, 2005).  Categorical preemption applies to "state or local regulation of matters directly

2   regulated by the Board – such as the construction, operation, and abandonment of rail lines."  *Id.*

3   This includes laws, rules or common law claims that would impose operating limits on a railroad or

4   attempt to condemn active corridors.  *Id.*  In these cases, there is no need to analyze the

5   reasonableness of the action.  Instead, "state and local laws that fall within one of the precluded

6   categories are a *per se* unreasonable interference with interstate commerce.  For such cases, once the

7   parties have presented enough evidence to determine that an action falls within one of those

8   categories, no further factual inquiry is needed."  *Id.*  "As applied" preemption, on the other hand,

9   comes into play if there is no categorical preemption and "requires a factual assessment of whether

10  that action would have the effect of preventing or unreasonably interfering with railroad

11  transportation."  *Id.* at *3.  Claims that might require an "as applied" analysis include non-competing

12  uses of a corridor such as those involving railroad crossings, wire crossings, and sewer crossings,

13  which would be analyzed to determine whether they "impede rail operations or pose undue safety

14  risks."  *Maumee & Western RR Corp, Petition for Declaratory Order*, No. 34354, 2004 WL 395835

15  (STB, Mar. 3, 2004).

16      In *Ao-Zhou*, the STB held that adverse possession claims like those here are categorically

17  preempt because they "would permit landowners to carve off strips of railroad ROW [right of way]

18  all over the country for non-rail use, even though the Board has not authorized the ROW to be

19  permanently removed from the nation's rail system under Title 49.  That untenable result would

20  undermine interstate commerce and the strong federal policy in favor of retaining rail property in

21  the national rail network, where possible."  2012 WL 2047726, at *1.  The STB explained that

22  "[e]ven if the property that [Plaintiffs] allegedly possess[] based on state property law is not currently

23  being used as an active line of railroad," its loss "would reduce the amount of ROW available for

24  _____

25  one court has analyzed preemption on an "as applied" basis does not mean that those same claims could not
be subject to complete preemption.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

proper track bed stabilization, drainage, and maintenance that would be required for any future railroad operations." *Id.* at *6. Further, its loss "would . . . prevent building a passing track or siding and reduce the capacity of the ROW to handle possible future traffic growth." *Id.*

### iii.   Plaintiffs Seek to Redefine Boundaries Already Recognized by the STB through Adverse Possession.

In the railbanking proceedings designating King County as interim trail manager, the STB conclusively defined the boundaries of the corridor, which "varies in width from approximately fifty feet to two hundred feet or more." *The Land Conservancy of Seattle & King Cnty.—Abandonment Exemption—in King Cnty., Washington*, No. AB-508X, 1997 WL 450377, at *1 (STB, Aug. 11, 1997). Those boundaries are reflected in railroad valuation maps, created and maintained by BNSF and its predecessors, pursuant to requirements of federal law. *See Dana R. Hodges Trust v. United States*, 101 Fed. Cl. 549, 559 (2011) (explaining that valuation maps "report the value of all property owned or used by every common carrier," pursuant to the Railroad Valuation Act of 1913). And only the STB can alter those boundaries, because its "jurisdiction over the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities . . . is exclusive." *Palmetto Conservation Found. v. Smith*, 642 F. Supp. 2d 518, 524 (D.S.C. 2009). "Based on the STB's exclusive jurisdiction, [Plaintiffs] could not acquire the permanent use of any part of the subject property . . . without authorization from the STB." *Id.* at 528. As such, Plaintiffs' claims that they have adversely possessed portions of the corridor are squarely within the express preemption of the ICCTA. The claims are categorically preempted because they involve "the construction, operation, and abandonment of rail lines" and "are a *per se* unreasonable interference with interstate commerce." *CSX Transp., Inc., Petition for Declaratory Order*, 2005 WL 1024490, at *2-3. No further factual analysis is needed. And, contrary to Plaintiffs' supposition, the degree of interference with railroad operations is simply irrelevant when the claim falls within the express preemption language of the ICCTA. Complete preemption applies.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    Moreover, even if an "as applied" analysis is required, there is no question that Plaintiffs'

2    adverse possession claim would interfere with railroad operations.  Plaintiffs' Complaint alleges that

3    they have "improved and occupied major portions of the ROW," including "without limitation

4    construction of walkways, driveways, parking areas, landscaping systems, utilities and the planting

5    of trees, shrubs and groundcover, all within the ROW."  Compl. ¶¶ 23-24.  Plaintiffs also claim to

6    "have adversely possessed the sections of the ROW, adjacent to their properties, lying outside the

7    margins of the former railroad tracks, ties and ballast."  *Id.* ¶ 24.  In *Neighbors I*, many of the

8    Plaintiffs here submitted declarations to this Court stating that the margins of the former tracks, ties

9    and ballast were at most fifteen feet wide.  *See, e.g*., *Neighbors I*, Declaration of Herbert and Elynne

10   Moore, Dkt. No. 8-2 at 16 (June 17, 2015) ("Thus, the entire width of the Trail is 12 feet.");

11   Declaration of Reid and Teresa Brown, Dkt. No. 8-2 at 24 (June 17, 2015) ("[T]he railroad occupied

12   a corridor of about 12 feet wide and not more than 15 feet wide on the centerline").  This Court may

13   take judicial notice of Plaintiffs' prior declarations to understand the scope of Plaintiffs' interference

14   with railroad operations.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

15       In opposition to Plaintiffs' Motion for a Temporary Restraining Order in *Neighbors I*, King

16   County previously submitted the declaration of Stephen M. Sullivan, which it resubmits here.  Mr.

17   Sullivan has over 40 years of experience working in the railroad industry.  Declaration of Steven

18   Sullivan, ¶ 2.  He concludes that reactivation of a Class I railroad on the corridor railbanked as the

19   East Lake Sammamish Trail would require a corridor from 59 feet 8.5 inches to 96 feet 8.5 inches

20   wide.  *Id.* ¶ 4.  This width is needed because of the size of the trains, minimum clearance for safety

21   purposes, drainage, and access to the corridor for maintenance and emergency operations.  *Id.* ¶¶ 5-

22   9.  No analysis is required to determine that Plaintiffs' attempt to adversely possess the corridor,

23   leaving only a twelve to fifteen-foot wide corridor, would clearly interfere with future railroad

24   operations.

25

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 14
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

**E.    The Court Should Exercise Supplemental Jurisdiction over Plaintiffs'
Remaining Claims.**

2      To the extent any claims remain that are solely governed by state law, this Court can and

3   should exercise supplemental jurisdiction.  28 U.S.C. § 1367(a).  Section 1367(a) "gives federal

4   district courts supplemental jurisdiction over all claims within the same case or controversy as a

5   claim conferring original jurisdiction."  *Hunt Skansie Land, LLC v. City of Gig Harbor*, 2010 WL

6   2650502, at *3 (W.D. Wash. July 1, 2010).  The Court should exercise that supplemental jurisdiction

7   and deny Plaintiffs' Motion.

8                          **III.    CONCLUSION**

9      King County properly removed Plaintiffs' Complaint to this Court.  This Court has federal

10   question jurisdiction and supplemental jurisdiction over Plaintiffs' claims.  The Court should deny

11   Plaintiffs' Motion to Remand.[4]

12

13      DATED this 12th day of October, 2015.

14                          DANIEL T. SATTERBERG
                            King County Prosecuting Attorney
15

16                          By: *s/ David J. Hackett*
                            DAVID HACKETT, WSBA #21236
17                          Senior Deputy Prosecuting Attorney

18                          By: *s/ H. Kevin Wright*
                            H. KEVIN WRIGHT, WSBA #19121
19                          Senior Deputy Prosecuting Attorney

20                          By: *s/ Peter G. Ramels*
                            PETER G. RAMELS, WSBA #21120
21                          Senior Deputy Prosecuting Attorney

22   _____

23   [4] Concurrent with this opposition, King County has filed a Motion to Consolidate this action with *Hornish v.
     King County*, No. 15cv00284, which asserts a claim for declaratory relief that King County "only received a
24   surface easement for a hiking and biking trail with the possible reactivation of a railroad by and through the
     Trails Act."  *Hornish*, Amended Compl. for Decl. Relief, Dkt. No. 31 at 13 (Aug. 14, 2015).  In the *Hornish*
25   action, King County also has asserted a counterclaim for quiet title and declaratory judgment. *Id.*, Answer
     and Counterclaim, Dkt No. 32 (Aug. 28, 2015).

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 15
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

By: _s/ Barbara Flemming_____
BARBARA A. FLEMMING, WSBA #20485
Senior Deputy Prosecuting Attorney

King County Prosecuting Attorney's Office
500 Fourth Ave., 9th Floor
Seattle, WA 98104
Telephone: (206) 296-8820 / Fax: (206) 296-8819
Email: david.hackett@kingcounty.gov
        kevin.wright@kingcounty.gov
        pete.ramels@kingcounty.gov
        barbara.flemming@kingcounty.gov

By: _s/ Emily J. Harris_____
EMILY J. HARRIS, WSBA #35763
DAVID I. FREEBURG, WSBA #48935
Special Deputy Prosecuting Attorneys
Corr Cronin Michelson
Baumgardner Fogg & Moore LLP
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
Telephone: (206) 625-8600 / Fax: (206) 625-0900
Email: eharris@corrcronin.com
        dfreeburg@corrcronin.com

*Attorneys for Defendant King County*

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

## CERTIFICATE OF SERVICE

2
     I hereby certify that on October 12, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

3

4
     DATED this 12th day of October, 2015.

5
                        *s/ Leslie Nims*

6
                        Leslie Nims

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND – Page 17
No. 2:15-cv-00970

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1107 01 fj07ch14vj.004